**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **Z. M-D. b/n/f THERESE MENZIA** | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 1:19-cv-00991** |
| | § | |
| **v.** | § | **Request For Jury Trial** |
| | § | |
| **AUSTIN INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S FIRST ORIGINAL COMPLAINT AND JURY DEMAND**

**NOW COMES** Z. M-D. by her next friend and parent, Therese Menzia, (collectively "he Plaintiffs") and files this their *First Original Complaint and Jury Demand* alleging that the Austin Independent School District (hereinafter referred to as "the School District"), violated the various rights of Z. M-D. as more specifically pled herein. Plaintiffs reserve the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof Plaintiffs would respectfully show this tribunal the following:

## I. PROLOGUE

1.  This is a case about a child of mixed heritage, Z. M-D., who was a victim of bullying, verbal and physical harassment, discrimination, and retaliation based on her race and alienage while a student at the Austin Independent School District.  As such, she suffered severe personal injuries and derivation of her civil rights as contemplated by Title VI of the Civil Rights Acts of 1964, 42 U.S.C. §2000 et seq. ("Title VI") and her constitutional rights as well. The family complained on numerous occasions about the harassment Z. M-D. experienced yet such complaints were never investigated by the School District's Title VI Coordinator, or anyone else for that matter.

2.  The vast majority of students who are bullied and harassed at school suffer in silence, attending school each with the simple hope and prayer that they simply, will be left alone. It is well-known across the professional education community that those who are not left alone, and continue to be victims of bullying and harassment, unfortunately turn their rage inward. They become angry and then depressed just like what has occurred with Z. M-D in this case.

3.  For both the child and their families, there is nothing more disturbing than knowing your children was not only the victim of bullying and harassment, but that you complained about the same and essentially nothing was done. To give meaning to their child's experience, they feel compelled to tell their story. They feel a duty to do so in the hope the presentation of their story will prevent the same from happening to another child and another family.  In the course of this telling, these victims benefit from a healing effect. The healing and empowerment is even more pronounced, when the effort to tell their story is before a Federal Judge and in Federal Court, where the bright light and sanitizing effect of federal law and the Judge's gaze is forced to shine upon the issue and the Defendant School District, as Mrs. Davis has chosen in her daughter's case.

## II. JURISDICTION

4.  Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §1331 and §1343 because the matters in controversy arise under the laws and rules of the United States as noted above.

## III. VENUE

5.  Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiff's claims occurred in the Western District of Texas and in the Austin Division.

## IV.  PARTIES

6.  Z. M-D. lives in Texas with her natural mother and parent, Therese Menzia in Austin, Texas. They live within the Austin Independent School District catchment area.

7.  Plaintiff Theresa Menzia is the legal parent of Z. M-D and she too is a citizen of the State of Texas and is a resident of Travis County, Austin, Texas. She brings forward this complaint as the representative of Z. M-D., a minor.

8.  The Austin Independent School District is a school district organized under the laws of the State of Texas. At all times pertinent to this case, Z. M-D. was a student at the Austin Independent School District. The Austin ISD may be served by Superintendent, Dr. Paul Cruz, at 1111 W. Sixth St., Austin, T, 78703.

## V.  STATEMENT OF FACTS

A.  A BRIEF HISTORY OF TITLE VI OF THE CIVIL RIGHTS ACTS OF 1974

9.  Title VI of the Civil Rights Act of 1964 provides that no person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 42 U.S.C. §2000d.

10.  The Department of Justice was given authority to develop regulations on the topic. For instance, after public hearing it promulgated, *Non-discrimination in Federally Assisted Programs- Implementation of Title VI of the Civil Rights Act of 1964* notes that discrimination is prohibited in that a recipient of federal funds, like the Austin Independent School District cannot use race or nationality as a factor in denying a service or benefit[1]; or

---

[1]. *See also* 34 C.F.R. §100.3(b)(1)(iii).

subject a person to separate treatment, or restricting2 a student from enjoying an advantage or opportunity3 given to another student based upon race or nationality. *See* 28 C.F.R. §42.104.

11.    Moreover, the District must provide assurances to students  that they are in compliance with the law by making available to the students information about these regulations including, among other things, the complaint process and the name of the person at the School District who is designated to address concerns of discrimination based upon race. *See* 28 C.F.R. §42.106(d); '42.107; *see also* 34 C.F.R. §100.4 (the United States Department of Education, by and through its *Office of Civil Rights*, has been given authority to investigate allegations of discrimination based upon race and allegations of violations of Title VI)4.

12.    Importantly, 28 C.F.R. Subpart F [*Coordination Of Enforcement of Nondiscrimination in Federally Assisted Programs*] reiterates much of what is addressed above in Subpart C. It requires the School District to provide information to students about Title VI throughout the school environment, whether it be in posters, student handbooks, manuals, pamphlets, websites and other material specific information about filing complaints. 28 C.F.R. §42.405 [Public Dissemination Of Title VI Information]; *see also* 34 C.F.R. '100.6(d) [Information To Beneficiaries And Participants].

13.    In 1994 the DOE *Office of Civil Rights* ("OCR") produced policy guidance entitled *Racial Incidents and Harassment Against Students,* 59 Fed. Reg 47 (March 10, 1994). It set the

---

[2]. *See also* 34 C.F.R. '100.3(b)(1)(iv).

[3]. *See also* 34 C.F.R. '100.3(b)(1)(vi).

[4]. *See* 59 Fed. Reg. (No 47) March 10, 1994 [Racial Incident And Harassment Against Students]; 68 Fed. Reg. (No. 219) 68050, November 13, 2000.

professional standards of care for addressing harassment when based upon race. The number one item was to create a campus environment by first, training staff and by providing related supervision, so that they and the entire educational community become sensitive to related concerns regarding bullying and harassment. Among other things it noted the importance of publicizing the issue, of non-toleration of harassment based upon race, training to students, of counseling to both the victim and perpetrator, of ongoing monitoring and follow up on incidents and ongoing assessment of the school climate and policies and practices to assure effectiveness.

14. Moreover, it reiterated the importance of assuring the parents received notice of all their procedural safeguards, including notice of who the Title VI Coordinator was and the grievance procedures available, including those at the school level, state level and federal level. In addition, the District is required to explain to the family the investigatory process, notice of who is the correct staff person to address their concerns, information about the District's duty to complete an investigation in a timely and complete manner, give copies of all investigatory findings to the parent and their right to appeal.

15. Importantly and in addition to all the above, the District has a duty to remedy the effects of the bullying and harassment a student experienced, a response tailored to the individual needs of the student and situation. It includes but is not limited to psychological testing and services, providing or paying for counseling services for the student, referral for medical and other community-based services, placing the students in different classes or environments or even removing the perpetrator from the hostile environment completely. In addition, a District may provide a one-to-one aide, social skills services, self-advocacy training and close monitoring of the victim. These professional guidelines and standards of care have

been reiterated and reissued numerous times by and through the OCR in directives entitled a "Dear Colleague Letter."

16.     That letter noted that, in order to comply with its obligations under Section 504 and Title II of the ADA, a school district must properly investigate and remedy disability harassment by adopting a "comprehensive approach to eliminating the hostile environment", including "at least"

    a.     disciplinary action against the harassers;

    b.     consultation with the district's Section 504/Title II coordinator to ensure a comprehensive and effective response;

    c.     special training for staff on recognizing and effectively responding to harassment of students with disabilities; and

    d.     monitoring to ensure that the harassment did not resume.

B.     TEXAS LAW AND PROFESSIONAL STANDARDS OF CARE

17.     It is long-standing and well-settled law in Texas that educators have a duty to report abuse and neglect of a minor. *See* Texas Family Code '261.101; *see also* Texas Education Code §21.0065;  19 T.A.C. §61.1051.  Abuse includes but is not limited to any type of conduct that causes or could cause emotional injury to a minor. Id. at §261.001(1)(A, B, E, F).

18.     In addition, School Boards were provided significant information from the *Texas Association Of School Boards* ("TASB") on how to best respond to assaults, bullying and harassment, when it occurred.  In fact, in September of 2008, TASB disseminated a memorandum entitled *Harassment And Bullying Policies In Public Schools.* It noted the requirement that

---

[5].  This law was taken from Vernon=s Civil Statutes and codified in 1995.

a School District must have an active policy and practice regarding both teacher upon student and student-to-student harassment.  It noted, the most recent applicable legislative changes.  Among other things it noted that a school district could be liable when there is student upon student harassment and the district's "deliberately indifference" cause students to undergo harassment or makes them vulnerable to it, and the harassment takes place in a context subject to the school district's control.

19.    Regarding addressing issues of assault, bullying and harassment it referred school districts in Texas to look to the U.S. Department of Education Office of Civil Rights, *Protecting Students from Harassment And Hate Crimes: A Guide For Schools*.  In addition, the TASB also helped the Austin ISD to develop several very specific policies, procedures and practices related to bullying, harassment and assault.

20.    In 2011 the Texas Legislature again addressed bullying, harassment and sexual harassment in the public schools by passing comprehensive and far-reaching legislation on the topic. Put into the Texas Education Code, staff was required to have specialized training on the topic (Section 21.451) and that students were to be provided various types of assistance including counseling.

21.    In response to all the above, in 2012 TASB again provided School Districts in Texas guidance on addressing allegations of bullying and harassment. It promulgated updated versions of policies and procedures that a school board like the Austin ISD could adopt to address bullying and harassment, whether student upon student, teacher upon student, or both.  The bulletin sent out to all Texas School Districts reiterated their duties to have a functional policy and procedure for reporting, investigating and issuing a determination regarding an allegation of bullying and harassment.  It also reiterated the duty to train not

only staff but students on issues regarding bullying and harassment.  It further underscored and reiterated the duty for staff to report allegations of harassment between a teacher and student to child protective services. Texas Family Code 261.101(b). It reiterated School District liability under operative caselaw, like Gebser v. Lago Vista Indep. School Dist., 524 U.S. 274, 291, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998) and Davis v. Monroe County Board Of Ed., 526 U.S. 629 (1999) reliance upon and the importance of OCR Guidelines.

C.    AUSTIN ISD POLICIES AND PROCEDURES

22.    The Austin ISD has had long and re-authorized policies and procedures related to *Student Welfare* and keeping students free from *Discrimination, Harassment & Retaliation* (FFH Local) which address, among other things, bullying, harassment, and assault.  In particular, it sets out definitions of discrimination and harassment based upon race and nationality.

23.    The District has a one (1) page policy and procedure FB (LOCAL) that deals with "EQUAL EDUCATIONAL OPPORTUNITY."  It notes the responsibility of the persons who handle complaints dealing sexual harassment (Tile IX Coordinator"), discrimination based upon disability (ADA/Section 504 Coordinator and that the Superintendent "serves as the coordinator for District compliance with all other non-discrimination law."  Nowhere in the policy does the Board specifically what other laws, the Superintendent may be responsible for.  It lets the public look to another document, FB (EXHIBIT) for further information for these coordinators.  Race is not mentioned.

24.    Policy FFH (LEGAL) is one (1) page deals with "STUDENT WELFARE- FREEDOM FROM DISCRIMINATION, HARASSMENT, AND RETALIATION."  It only deals with violations of Title IX regarding sexual harassment.  Race is not mentioned.

25.    FFH (REGULATION) is a thirteen (13) page policy that also deals with "STUDENT

WELFARE- FREEDOM FROM DISCRIMINATION, HARASSMENT, AND RETALIATION." It too notes that discrimination based upon race, color or nationality is prohibited, and again only on the first page. The rest of the policy addresses freedom from discrimination and is heavily weighted to discrimination based upon disability (Section 504 and the ADA) or sex. (Title IX). Like those before it, it also briefly notes that the Superintendent "serves as the coordinator for District compliance with all other non-discrimination law" but again, nowhere in the policy does the Board specifically what other laws, the Superintendent may be responsible for. Like those before it, race is not mentioned again.

26. FFH (LOCAL) is a seven (7) page policy that also deals with "STUDENT WELFARE-FREEDOM FROM DISCRIMINATION, HARASSMENT, AND RETALIATION." It does note that discrimination based upon race, color or nationality is prohibited on the first page. The rest of the policy addresses freedom from discrimination based upon disability (Section 504 and the ADA) or sex. (Title IX). It too notes that the Superintendent "serves as the coordinator for District compliance with all other non-discrimination law." Again, nowhere in the policy does the Board specifically what other laws, the Superintendent may be responsible for. Race is not mentioned again.

27. Notwithstanding its emphasis on disability discrimination and sexual harassment FHH (LOCAL) at least has a small section that is applicable to discrimination based upon race.

28. It has a section dealing with the duty to not retaliate against anyone because a complaint has been filed on their behalf. It provides information about the reporting and investigatory process. It requires allegations of harassment based on race and nationality to be directed to the School District's Superintendent, and the family be given that person's contact

information.

29.     The family also was required to receive actual notice of their procedural rights. The school

District's investigation needed to be completed in a timely manner, usually less than 10 days,

then a written report should be developed, and interim action taken, as appropriate. The

report must address whether or not prohibited contact occurred and must be filed with the

relevant School District Official. If a student is not classified with the outcome of the

investigation, they have the right to appeal the decision through the District's grievance

procedure or even with the Office of Civil Rights with the U.S. Department of Education.

(FFH Local).

30.     The Policies also note a non-exhaustive list of potential corrective actions. They include, for

instance, a training program for those involved in the complaint, counseling for the victim

and even the perpetrator. There also had to be a system to follow up with the victim to assess

the effectiveness of any intervention that may have been provided. There should also be,

where warranted, a comprehensive education program for the school community. The

district should also address increasing staff monitoring. (FF Local).

31.     Importantly, the School Board has developed a list of required professional staff

development subjects for staff. (D.M.A. LEGAL). There are several that focus on topics of

disability and sexual harassment; however, there is nothing on that list that requires staff to

take any particular training on dealing with race or cultural sensitivity issues. Nor is there

is any specific training provided on what is termed "Implicit bias" or "Unconscious Bias."

32.     The Austin Independent School District lack of policies and procedures regarding racial bias

shows how they fail to make discrimination based upon race an issue of importance.

D.      ABOUT Z. M-D.

33.  Z. M-D. was born on 11/3/2006. She is now twelve (12) years old.

34.  Z. M-D. is a child of mixed heritage.  She immigrated to the United States with her mother and father and younger brother in April of 2015. Prior to coming to the United States, Z. M-D. had spent her childhood both in Cameroon and Brazil.

35.  During the period of time that makes the basis of this complaint, she was a student at Martin Middle School in the Austin Independent School District.

E.   Z. M-D.'S EXPERIENCE AT THE AUSTIN ISD

I.   2017-2018 SCHOOL YEAR

36.  In August of 2017 of her sixth-grade year, Z. M-D. began to experience bullying and harassment because of her ethnicity and/or race.

37.  Throughout the course of the 2017-2018 school year, until Z. M-D's eventual transfer to a new middle school, Z M-D. suffered ongoing bullying at the hands of a group of female students.

38.  One student (J'.), among other girls, would scream Z. M-D.'s names across the gym to get her attention and proceed with making fun of her for being "different" and smelling "bad".

39.  Other students would touch Z M-D.'s hair without consent and continue to after she asked them to stop.

40.  Students would tell Z M-D. "to go back where [she] came from" and that she "didn't belong".

41.  Additionally, student would call Z M-D. slanders such as "bitch" and "nigger" and state things such as, "bitch look at me when I am talking to you" or "go back to where you belong".

42.  The group of female students would harass Z M-D. and question her about where she comes

from and why she smells the way that she smells.

43.     Z. M-D. reported the bullying and harassment to the principal multiple times, but nothing was done.

44.     Plaintiff parent met with the school principal of Martin Middle School on September 26, 2017, who reported that the bullying would be addressed.

45.     Also, despite Ms. Menzia's continued pleas for Martin Middle School to investigate the matter and rectify the situation, the bullying continued to escalate, and on October 17, 2017, a physical altercation transpired.

46.     Z. M-D. complained of bullying daily to her mother.

47.     After experiencing bullying and harassment by her peers, Z. M-D. usually walked away or would tell a teacher or administrator, but the school district did not do anything to help Z. M-D.

48.     On Friday, October 13, 2017, Ms. Menzia received a phone call from the school counselor, who reported that Z M-D. was having a problem at school and wanted her mother to come to the school.

49.     Ms. Menzia went to the school on October 13, 2017 and was informed that Z M-D. rated high for suicide on the suicide survey and was told that a counselor would contact her for an appointment.

50.     While at the school on October 13, 2017, Z. M-D.'s mother requested the assistant principal file an investigation for bullying.  The results of the investigation came back that Z. M-D. was not being bullied at school.

51.     On October 17, 2017, a physical altercation transpired in the hallway of Martin Middle School that was initiated by the continued taunting and bullying of Z. M-D.

52. Despite having knowledge of the ongoing bullying, Z. M-D. was treated by Martin Middle School as the perpetrator and following a hearing, Z. M-D. was suspended from school for three days and sent to alternative school as a result of the altercation.

53. Vice Principal, Mr. Lopez went as far as to say to Z. M-D., "who is the bully now".

54. Following the events of October 17, 2017, Z. M-D.'s depression worsened and ultimately led to self-harm.

55. Following the events of the October 17, 2017 incident, Z. M-D. exercised self-harm.  She had a pair of scissors and was going to cut her veins, but her mother came into the room and stopped her.

56. Z. M-D. was taken to Dell Children's and, thereinafter, admitted at Seton Shoal Creek Hospital on October 21, 2017, for a psychiatric evaluation and provided medical care for her declining mental health and exhibited symptoms of depression and suicidal ideation.

57. Upon discharge from Seton Shoal Creek Hospital, one of Z. M-D.'s attending physicians provided a letter stating that Z. M-D. was admitted "due to mental health concerns in context of bullying at Martin Middle School and that he had "concerns with current status at Martin Middle School and encourage [d] the administration to continue to investigate the bullying allegations as this situation directed affected Z. M-D.'s emotional state and well-being."

58. The attending physician also noted in the letter that "if it all possible, future accommodations for Z. M-D. could also be helpful to allow for her to have space if in a stressful situation."

59. After Z. M-D's stay at Seton Shoal Creek Hospital, she continued undergoing therapy for her depression.

60. Z. M-D. reported to her therapist as having little to no friends.  Although she reports she likes being alone, she states "I guess it would be nice have friends."

61. Despite Z. M-D's anguish over the harassment she faced on a daily basis at Martin Middle School, the school caused further distress to sentence Z. M-D. to alternative school for the October 17, 2017, incident.

62. Furthermore, the parents of Z. M-D.'s bully opted to press criminal charges which we subsequently dismissed.

63. Following Austin Independent School District reversing its decision to condemn Z. M-D. to an Alternative Learning Center, Ms. Menzia requested for her daughter to transfer public schools.

64. The request to transfer to a public school within the district, was Plaintiff parent effort to keep Z. M-D. safe and to remove her daughter from the harassing environment that lead to her depression and decline in mental health.

65. Martin Middle School and/or Austin Independent School District refused Ms. Menzia's request and Z. M-D. returned to Martin Middle School where the bullying and harassment of her perpetrators continued.

66. At one point, perfume was sprayed in Z. M-D.'s face.

67. The group of female students continued to make harassing remarks toward Z. M-D., commenting on her smell and telling her she didn't belong there.

68. These remarks left Z M-D. with a feeling of desperation and unbelonging in the United States.

69. It was not until the Austin chapter for The National Association for the Advanced of Colored People "NAACP" became involved and sent a letter to Martin Middle School around mid-November 2017, that the school district allowed for the transfer to remove Z. M-D. from the dangerous environment. Z. M-D. transferred public schools on or about December 18, 2017.

70.     Moreover, Z. M-D. has suffered a loss of educational opportunities and benefits.   For

        months, she was deprived of a supportive environment free of bullying and harassment.

E.      NOTICE OF HARASSMENT AND DELIBERATE INDIFFERENCE.

71.     On several occasions, Ms. Menzia formally notified the school of the ongoing harassment

        Z. M-D. was enduring.

72.     Both Z. M-D. and her mother, Ms. Menzia had multiple exchanges with Vice Principal of

        Martin Middle School, Mr. David Lopez, where they were made to feel that he was apathetic

        towards the ongoing bullying.

73.     Indeed, Mr. Lopez's apathy was made evidently clear with how he proceeded to handle the

        October 17, 2018 altercation.

74.     After speaking with Vice Principal Lopez once again, Ms. Menzia once again requested an

        investigation.

75.     On October 17, 2017, Z. M-D.'s mother, Ms. Menzia received a letter stating that, after

        investigating her concerns of bullying, "I have concluded that the report conduct does not

        constitute "bullying" or "harassment" as defined in law and District policy."

76.     Despite the toll that the bullying and harassment had taken on Z. M-D., it was an uphill

        battle for Ms. Menzia to prevent the school from adding to the traumatic experience by

        reprimanding her for the incident that resulted from her bullying on October 17, 2017.

77.     Ms. Menzia appealed the decision to have her daughter removed to the Alternative Learning

        Center.

78.     On November 3, 2017, Ms. Menzia received a letter from Gabriela Soto, M.Ed., Austin ISD

        Middle School Office Hearing Designee, stating that the recommendation from Martin

        Middle School to have Z. M-D. removed to the Alternative Learning Center was being

denied, and instead, the three days of home school suspension and seven days at Seton Shoal Creek Hospital would be deemed "time served."

79.   On January 23, 2018, Ms. Menzia received a letter from Paul Perez, Assistant Director for Student Services/Student Discipline of Austin ISD, informing Ms. Menzia that the "Assault with Injury" had been deleted from Z. M-D.'s record and that "the issues/concerns have been addressed by appropriate personnel directly with the Assistant Principal.

F.   EFFECTS OF THE RACIAL HARASSMENT AND BULLYING ON Z. M-D.

80.   The harassment that Z. M-D. endured caused her to school during the time she was seeking medical attention subsequent to her suicide attempt.  Z. M-D. developed anxiety, stress, and self-esteem issues that negatively impacted her educational experience and played a role in her missing several days of school.

G.   THE SCHOOL DISTRICT VIOLATED TITLE VI IN THE FOLLOWING WAYS

81.   Whether it be pursuant to applicable jurisprudence, regulations, executive agency directives, Texas law, professional standards of care and School Board Policies and procedures, the Austin Independent School District violated the rights of Z. M-D., in the following manners and particulars.

82.   First and foremost the District failed to have the Title VI Coordinator involved in this case. In fact Plaintiffs reasonably believe the District has a custom and practice of having a person at the campus level act as a gate-keeper and keep all relevant claims of discrimination, whether based upon race, religion, nationality, sex or gender, or disability, away from the properly identified person within the Austin Independent School District chain of command.

83.   Additionally, the School District Officials failed to provide to provide Z. M-D. or her parents notice of their procedural rights, as set forth by the regulations promulgated under Title VI.

84.     They never provided Z. M-D. or her parents the information about who the Title VI Coordinator was for the District.

85.     They never provided information to Z. M-D. or her parents about their right to file a formal grievance with the School District in a timely manner.

86.     They never provided Z. M-D. or her parents the information about their right to file a formal complaint with the Office of Civil Rights in a timely manner.

87.     They failed to provide to provide Z. M-D. school-based counseling services.

88.     They failed to offer the parents they pay for Z. M-D. to receive counseling services.

89.     They failed to provide her an aide or shadow to observe her at school.

90.     They failed to provide her social skills training.

91.     Moreover, the School District failed to implement appropriate safety measures to prevent future bullying and otherwise provide a safe environment for Z. M-D.

92.     They failed to address the impact of the harassment on Z. M-D.

93.     They failed to complete a confidential survey of bullying and harassment at the school.

94.     They failed to use the incident with Z. M-D. as a teaching moment with her classmates.

95.     They failed to use the incident with Z. M-D. as a teaching moment with staff.

96.     There were no special auditorium programs on Title VI related issues.

97.     There were no specific classroom programs on Title VI related issues.

98.     There was no meeting or mediation set up with Z. M-D. and any of the other children she had problems with.

99.     There was no training to students or staff on issues of unconscious or implicit bias.

100.    Based upon all the above, the Austin Independent School Board failed in a number of manners and particulars as well, regarding training and supervision of staff.

101.    For instance, even though Plaintiff parent made a number of explicit complaints they believed Z. M-D. was a victim of bullying and harassment because she was a female child of mixed heritage, no one ever reported it to the School Superintendent as required.

102.    Whatever investigations were done by District personnel, none were completed under the very specific purview and guidelines for a Title VI Investigation.

103.    The School Board apparently never provided any staff training on how to conduct a Title VI Investigation.

104.    Even though there are a substantial number of mixed heritage students there are no specific training programs for staff on the specific cultural issues regarding this race/ethnicity.  Nor is there any specific training program to staff on implicit or unconscious bias.

105.    Because of the various failures of the School Board and School District personnel to correctly deal with the allegations that Z. M-D. was a victim of bullying and harassment, whether by other students or staff or both, because she was a female of mixed heritage.

## VI. <u>STATE ACTION</u>

106.    Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

107.    The District, in any capacities and in all matters, acted under color of state law when it permitted Plaintiff to be subjected to the wrongs and injuries set forth herein.

## VII. <u>UNCONSTITUTIONAL POLICIES, PROCEDURES, PRACTICES & CUSTOMS</u>

108.    During the relevant time period contemplated by this cause of action, the Austin ISD School Board had an actual practice and custom of conscious and deliberate indifference to the federal law, federal rules, directives from federal executive agencies, and their own School Board policies and procedures in regard to the discriminatory treatment of Z. M-D., and such

failures were a moving force in the injuries to Z. M-D. for which she seeks recovery pursuant to 42 U.S.C. §1983.

109.    First and foremost, the School Board has failed to have policies and procedures sufficient to address discrimination based upon race, religion, country of origin or alienage as compared to discrimination based upon sex pursuant to Title IX of the Educational Acts of 1972, or disability pursuant to Section 504 of the Rehabilitation Act of 1973 or the Americans With Disabilities Act,

110.    Specifically, the District had a custom and practice of refusing to fulfill the requisites of Title VI Jurisprudence and investigate allegations of bullying, harassment and assault after receiving complaints that such actions were based upon racial animus.

111.    The acts and omissions of School District staff evidence that the District has a custom and practice of keeping the staff member identified to address Title VI claims from actually completing an objective and skilled investigation. In fact the District has a custom and practice of having a person at the campus level act as a gate-keeper so as to keep all relevant claims of discrimination, whether based upon race, religion, nationality or alienage as in this case, or sex or gender under Title IX of the Educational Acts of 1972, or disability pursuant to Section 504 of the Rehabilitation Act of 1973 or the Americans With Disabilities Act, away from the properly identified person within the Austin Independent School District chain of command.

112.    In a related vein, the District is liable to Z. M-D. for violations of Z. M-D.'s rights pursuant to the Due Process Clause of the 14th Amendment pursuant to a Theory of Supervisory Liability as the School District Superintendent has permitted such a custom and practice.

113.    Additionally, and in the alternative, this School Board has obviously failed to correctly

supervise staff regarding the laws, regulations and directives as noted above. Such failures, in addition and in the alternative to the above, rise to the level of a separate violation of the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. '1983.

114.    The fourteenth amendment of the U.S. Constitution states that,

"no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

115.    Austin Independent School District is an agent of the state.  It is subject to the laws, rules, and regulations of the state.  As such, Defendant School District has an obligation to protect the rights of Z. M-D. Moreover, Z. M-D. has the right to attend public school without the harassment of other students and has the right to feel secure and safe in the school environment. Austin Independent School District has denied Z. M-D. of that right.

116.    Moreover, and in addition, and also in the alternative to the above, this School Board obviously has failed to train staff in regard to the laws, regulations and directives as noted above. Such failures, in addition and in the alternative to the above, rise to the level of a separate violation of the Fourteenth Amendment of the Constitution of the United States for which Plaintiffs seek recovery pursuant to 42 U.S.C. §1983, which states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

As such, Section 1983 provides for a civil action for the deprivation of rights. Austin Independent School District has violated the rights of Z. M-D.'s by creating, and failing to

remedy, a hostile educational environment, proximately causing Z. M-D.'s damages.

117.   Specifically, they obviously failed to train staff on how to address complaints based upon racial discrimination. They failed to train staff on cultural issues regarding mixed heritage persons. They failed to train staff on cultural issues regarding unconscious bias or implicit bias of persons who are of mixed heritage. The need for such training is obvious when looking at the issues facing the greater City of Austin, the State of Texas and the greater United States of America, regarding these very same concerns. Moreover, such training is required by federal jurisprudence.

118.   Article 1 Section 3a of the Texas Constitution states,

*"Equality under the law shall not be denied or abridged because of sex, race, color,* creed or national origin."

As such, Z. M-D. has been denied her right to a free public education because of the harassment and taunting of other students and the administration's inability to prevent the continued harassment and taunting.

## VIII. CLAIMS PURSUANT TO TITLE VI OF THE CIVIL RIGHTS ACTS OF 1964

119.   Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

120.   Title VI of the Civil Rights Act of 1964 and its implementing regulations require that each state that receives disbursements, including the state's political subdivisions, not permit the student to be a victim of discrimination based upon race or racial stereotypes or alienage.

121.   Plaintiffs assert that because the supervisory staff with Austin ISD knew that Z. M-D. was being bullied, harassed and physically assaulted based upon her race and because of her country of origin and failed to keep her safe from harm, and failed to provide her an

environment that was not hostile, such failures as noted above, have together and separately, contributed to violating her civil rights pursuant to Title VI.

122.    Pursuant to relevant jurisprudence on the topic, including School Board Policies and Procedures, District personnel had a duty to investigate such concerns and refused to do so and acted with deliberate indifference, thereby violating her civil rights pursuant to Title VI thereby.

123.    In addition, Plaintiffs assert that because the School District Defendant refused to remedy the effects of the bullying and harassment Z. M-D. experienced, whatever the cause, also violating her civil rights pursuant to Title VI thereby.  42 U.S.C. 200d provides that:

"No person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

As detailed hereinbefore, Austin Independent School District allowed discrimination and harassment by other students on the basis, in whole or in part, of her race, ethnicity and immigration status.

## XI.  RATIFICATION AND RESPONDENT SUPERIOR

124.    Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

125.    Austin ISD ratified the acts, omissions and customs of school district personnel and staff.

126.    As a result, Austin ISD is also vicariously responsible for the acts and omissions of staff persons who were otherwise responsible for the safety of Z. M-D. pursuant to the Theory of Respondent Superior.

## X.  PROXIMATE CAUSE

127.   Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if herein set forth.

128.   Each and every, all and singular of the foregoing acts and omissions, on the part of the School District, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## XI.  <u>DAMAGES</u>

129.   Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

130.   As a direct and proximate result of the School District=s deliberate indifference, Z. M-D. has suffered injuries and damages, for which she is entitled to recover herein including but not limited to:

   a.   Loss of equal opportunities to educational services and benefits from same as compared to her peers who were not victims of discrimination;

   b.   Physical pain in the past;

   c.   Medical expenses in the past;

   d.   Medical expenses in the future;

   e.   Mental anguish in the past;

   f.   Mental anguish in the future;

   g.   Physical impairment in the past,

   h.   Reimbursement of past and future taxes collected by the Austin Independent School District that Z. M-D. cannot benefit from; and

   i.   Various out-of-pocket expenses incurred by her family but for the acts and omissions of the School District.

## XII. ATTORNEY FEES

131.   Plaintiffs incorporate by reference all the above related paragraphs, as if fully set forth herein.

132.   It was necessary for Plaintiffs to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney fees and costs pursuant to 42 U.S.C. §2000d et seq. and 42 U.S.C. §1988.

## XIII. SPOLIATION

133.   Plaintiffs hereby require and demand that Austin ISD preserve and maintain all evidence pertaining to any claim or defense related to the assault or other violations that make the basis of the complaint and the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence regarding the violations set forth herein.

134.   Failure to maintain such items will constitute "spoliation of evidence," which will necessitate use of the spoliation inference rule- an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoilators case.

## XIV. DEMAND FOR JURY TRIAL

135.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray for judgment against the District in the manner and particulars noted herein and above, and in an amount sufficient to fully

compensate them for the elements of damages noted herein and above, judgment for damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action and for its appeal if required, together with pre- and post- judgment interest and court costs expended herein, as well as the equitable issues noted herein and above; and for such other relief as the Court, in equity, deems just and proper.

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
SBN 00783829
FID 21488
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email]; and

Mr. Daniel J. Christensen, Esq.
DC Law, PLLC
SBN 24010695
daniel@texasjustice.com [Email]
Ms. Christine R. Londergan, Esq.
DC Law, PLLC
SBN 24109483
christine@texasjustice.com [Email]
1012 W Anderson Lane
Austin, Texas 78757
(512) 220-1800 [Telephone]
(512) 220-1801 [Facsimile]
ATTORNEYS FOR PLAINTIFFS