# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **Z. M-D b/n/f THERESE MENZIA,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | **Case No. 1:19-CV-991-LY** |
| | § | |
| **AUSTIN INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Austin Independent School District's Motion for Summary Judgment, filed February 26, 2021 (Dkt. 49); Plaintiff's Response, filed March 29, 2021 (Dkt. 60); and Austin Independent School District's Reply, filed April 1, 2021 (Dkt. 63).[1] The District Court referred the motion to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 25.

## I.    Background

On October 11, 2019, Therese Menzia ("Menzia"), as next of friend to her minor daughter Z. M-D. ("Z")[2] (collectively, "Plaintiffs"), filed this discrimination lawsuit against Austin Independent School District ("AISD"). Z, who identifies as "a person of color" and of "mixed

---

[1] AISD argues that Plaintiffs' declarations attached to Plaintiff's Response (Dkt. 60-1 and 60-2) should be stricken from the record because the declarations contain testimony that directly conflicts with their sworn depositions. Dkt. 63 at 1-2. The Court has not relied on any statements contained in the declarations. Accordingly, AISD's motion to strike is **DISMISSED** as moot.

[2] Z. M-D. was born on November 3, 2006. Dkt. 17 ¶ 25.

heritage" (her mother is from Cameroon and her father is from Brazil), immigrated to the United States with her family when she was nine years old. Dkt. 17 ¶ 25. From August 2017 through December 2017, Z attended Martin Middle School ("MMS") in Austin, Texas and AISD.

Plaintiffs allege that while she was a sixth-grade student at MMS, a group of female students (hereinafter, "the Harassers") bullied and harassed Z because of her race, ethnicity, and "the fact that she born outside of the United States." *Id.* ¶ 26. Specifically, Plaintiffs allege that the Harassers verbally harassed and bullied Z "on a daily basis" by telling her that she was "ugly" and "musty smelling," telling her to "go back to where you came from," and calling her racist names, including the "N word," "African flea snatcher," and "African booty snatcher." Z Dep.[3] at 11:14-19, 16:11-13, 59:16, 60:10. Three of the Harassers identify as Black or Hispanic. Exh. 4 to Dkt. 49.

Plaintiffs contend that the bullying and harassment "got so bad that [Z] didn't want to go to school." Dkt. 60 at 7. On September 26, 2017, Plaintiffs met with David Lopez, Assistant Principal for all sixth graders at MMS, to report the bullying. Z described the bullying and racist comments, identified the Harassers, and told Lopez that she no longer wanted to go to school because of the bullying. Menzia Dep.[4] at 14:8-15:5; Z Dep. at 37:12-24. In response, Lopez told Plaintiffs that he would call the Harassers' parents and then call Menzia back to make sure that the bullying had stopped. Menzia Dep. at 15:1-5. Lopez, however, did not talk to the Harassers' parents at that time because he allegedly was not able to reach them by phone. Dkt. 49 at 16; Dkt. 60 at 7. In addition, Lopez failed to check in with Menzia to ensure that the bullying had stopped. Menzia Dep. at 19:9-10.

---

[3] Exh. 2 to Dkt. 49.

[4] Exh. 1 to Dkt. 49.

Plaintiffs allege that the bullying continued. On September 29, 2017, Z reported the bullying to her history teacher, Mr. Ramos, who referred the matter to the school counselor, Asha Creary. On October 13, 2017, Z told her advisory teacher, Ms. Urguhart, that she "didn't want to, like, live anymore" because of the bullying. Z Dep. at 40:4-18. Ms. Urguhart immediately took Z to Creary, who performed a suicide assessment on Z which showed that Z was suicidal. Creary immediately called Menzia. After Menzia arrived at the school, she met with Lopez and asked him why he never got back to her about the bullying. Lopez told her that he never talked to the Harassers' parents because "they don't pick up the phone." Menzia Dep. at 19:12. Menzia complained that a phone call was not the only way to reach the parents and then asked Lopez again to initiate a bullying investigation into the Harassers' conduct. Lopez told Menzia that he would investigate the alleged bullying.

On October 17, 2017, Z was walking through the school gymnasium and thought she heard one of the Harassers call her a "bitch." Dkt. 49-2 at 14. In response, Z grabbed J'K.W. around the neck and pushed her into a wall. *Id.* After being notified of the altercation, Lopez called campus resource officer Tim Osio to investigate the incident. J'K.W.'s parents pressed criminal charges against Z. After investigating the incident, Officer Osio arrested Z for Assault but released her to Menzia's custody instead of transporting her to the juvenile detention center.[5]

When Menzia arrived at the school to pick up Z, she asked Lopez about the bullying investigation. Lopez informed her that he had determined that "there was no bullying" and that "[Z] is the bully." Menzia Dep. at 29:22-30:1. Menzia yelled at Lopez and accused him of mistreating Z because she is Black. Lopez asked Menzia to leave his office. Menzia then met with MMS Principal Monica Delagarza-Conness and complained about the bullying and Lopez's

---

[5] The assault charge eventually was deleted from Z's record.

alleged failure to address it. Delagarza-Conness informed Menzia that she would investigate her allegations. During her meeting with Lopez, Lopez reported that Z and J'K.W. "mutually disliked each other, and both students would call each other names." Delagarza-Conness Aff., Dkt. 49-8 at 20. Delagarza-Conness avers that Lopez never told her that students called Z the "n-word" or physically assaulted her. *Id.* at 20-21. Because of Menzia's complaints about Lopez, Delagarza-Conness decided to reassign Z to Brittany Showels, Assistant Principal for all seventh graders at MMS. Later the same day, Lopez sent Menzia a letter informing her that he had concluded his investigation into the bullying, opining that the name-calling between Z and the Harassers was mutual and concluding that "the reported conduct does not constitute 'bullying' or 'harassment' as defined in law and District policy." Dkt. 49-8 at 25.

Per AISD policy, the mandated discipline against a student who assaults another student is removal to the AISD Alternative Leaning Center ("ALC"). Delagarza-Conness Aff. at 4. After conducting a "removal conference," during which Z and Menzia testified, Delagarza-Conness recommended that Z be suspended from MMS for three days, then sent to the ALC. *Id.* Plaintiffs complain that although the school was aware of the prior bullying of Z by the Harassers, MMS punished Z for the incident by charging her with Assault and sending her to the ALC. Before Z was to report to the ALC, however, she attempted to cut herself with a pair of scissors because she did not want to attend the ALC. On October 21, 2017, Z was admitted to Shoal Creek Hospital for a psychiatric evaluation and treatment for her depression and suicidal ideation. Subsequently, AISD reversed its decision to send Z to the ALC and Z returned to MMS.

Plaintiffs allege that the bullying continued once Z returned to MMS. On November 17, 2017, Menzia reported to Delagarza-Conness that the Harassers touched Z's hair, threw a ball at Z's face during gym class, and sprayed perfume in her face and said that Z "stinks." Dkt. 49 at 10.

Delagarza-Conness conducted an investigation into the allegations and implemented a "Stay Away Agreement" between Z and the Harassers, directing Z and the Harassers to stay away from each other during the school day and at any school-sponsored events. Dkt. 49-8 at 22; Exh. 49-11 at 2. However, AISD asserts that Menzia and Z ultimately stymied the investigation by refusing to cooperate with the investigation. Dkt. 49-8 at 22. Plaintiffs contend that there is no evidence in the record that MMS ever performed a proper investigation into the allegations of harassment.

On November 27, 2017, Menzia requested that Z be transferred to Lamar Middle School. Dkt. 49-1 at 64. The transfer was initially denied because Lamar Middle School's attendance was frozen. Menzia appealed, and on December 18, 2017, Z was transferred to Kealing Middle School. On January 23, 2018, Menzia received a letter from Paul Perez, AISD Assistant Director for Student Services/Student Discipline, informing her that the assault charge had been deleted from Z's record. Plaintiffs allege, however, that the school never addressed the ongoing bullying and harassment.

Plaintiffs filed this lawsuit against AISD on October 11, 2019, alleging that AISD failed to train staff, address complaints, and remedy the effects of the alleged bullying and harassment of Z due to her race and national origin. In their First Amended Complaint, Plaintiffs allege that AISD's actions and failure to act violated Title VI of the Civil Rights Act of 1964 ("Title VI") and Z's Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983. First Amended Complaint, Dkt. 17. Plaintiffs allege that AISD's failure to remedy the bullying caused Z to suffer mental anguish, physical impairment, medical expenses, and loss of educational opportunities.

On April 20, 2020, AISD filed a Motion to Dismiss, arguing that Plaintiffs failed to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). Dkt. 21. The undersigned Magistrate Judge issued a Report and Recommendation that the District Court grant the Motion to

Dismiss Plaintiffs' claims under § 1983, but deny the Motion with regard to Plaintiffs' claims under Title VI. Dkt. 27. The District Court adopted the Report and Recommendation. Dkt. 30.

In its Motion for Summary Judgment, AIDS argues that it is entitled to summary judgment on Plaintiff's Title VI claim. Plaintiffs oppose AISD's Motion, contending that they have provided competent evidence to defeat it. The Court makes the following recommendations.

## II.    Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and

6

unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.    Analysis

Plaintiffs allege that AISD violated Title VI because MMS school officials knew that Z was being bullied, harassed, and physically assaulted by other students because of her race, but failed to protect her from such racial discrimination. Specifically, Plaintiffs complain that AISD violated Title VI by failing to properly investigate Plaintiffs' complaints of bullying and stop the bullying and harassment of Z. Plaintiffs also allege that AISD failed to notify the AISD Title VI Coordinator or the Superintendent of the bullying and harassment.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A school district receiving federal funds may be liable under Title VI for student-on-student harassment if: (1) the harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school," i.e., a racially hostile environment; (2) the district had actual knowledge of the harassment; (3) the harasser was under the district's control; and (4) the district was deliberately indifferent to the harassment. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) (quoting *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)).

AISD disputes the first, second and fourth prongs. The Court addresses each in turn.

### A.  Racially Hostile Environment

Whether racially oriented conduct rises to the level of actionable harassment "depends on a constellation of surrounding circumstances, expectations, and relationships including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." *Davis*, 526 U.S. at 651. For student-on-student harassment to be considered "severe, pervasive, and objectively offensive," *id.* at 650, "the harassment must be more than the sort of teasing and bullying that generally takes place in schools." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011). "There is no question, though, that repeatedly being referred to by one's peers by the most noxious racial epithet in the contemporary American lexicon, [and] being shamed and humiliated on the basis of one's race is harassment far beyond normal schoolyard teasing and bullying." *Fennell*, 804 F.3d at 409 (internal quotation marks omitted). This is precisely what happened to Z.

While not all of Plaintiffs' complaints of bullying were based on race (e.g., allegations that the Harassers called her a "bitch" and threw a ball in her face), Plaintiffs have provided summary judgment evidence that the Harassers verbally harassed and bullied Z "on a daily basis" by calling her racist names, including the "N word," "African flea snatcher," and "African booty snatcher," and telling her to "go back to where you came from." Z Dep. at 11:14-19, 16:11-13, 59:16, 60:10. Accordingly, Plaintiff has demonstrated a genuine dispute as to whether the harassment was severe, pervasive, and objectively offensive. *See Fennell*, 804 F.3d at 409 (holding that plaintiffs raised a genuine dispute that a racially hostile environment existed at school where student repeatedly was referred to as "nigger" and "stupid nigger"); *DiStiso v. Cook*, 691 F.3d 226, 243 (2d Cir. 2012) (noting that use of the word "nigger" approximately eight to fifteen times over a single school year raised a question as to whether the name-calling was severe or pervasive);

*Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000) (holding that racially offensive remarks made every few months over three years were sufficient to raise a genuine dispute as to whether a hostile environment existed under Title VII), *abrogated on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006).

This harassment, moreover, deprived Z "of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. As the Fifth Circuit has stated: "The harassment must have a concrete, negative effect on the victim's education, such as creating a disparately hostile educational environment relative to the victim's peers, forcing the student to change his or her study habits or to move to another district, or lowering the student's grades." *Fennell*, 804 F.3d at 410.

Here, the alleged harassment had a concrete, negative effect on Z's education. Z attempted to harm herself, had to be hospitalized for severe depression and suicidal ideation due to the harassment, missed school, did not want to return to school, and ultimately transferred to a different school. These facts are sufficient to create a fact issue as to whether Z was deprived of educational opportunities by the "severe, pervasive, and objectively offensive" harassment at MMS. *See I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 373 (5th Cir. 2019) (finding that plaintiff demonstrated a genuine dispute that she was deprived of educational benefits where she did not want to return to school on account of harassment); *Fennell*, 804 F.3d at 410 (holding that facts were sufficient to raise a genuine dispute that plaintiffs were deprived of educational opportunities by harassment where students suffered from anxiety, required alternative study arrangements, and withdrew from school).

**B. Knowledge of the Harassment**

To show that AISD had knowledge of the harassment, Plaintiffs must show that "an official with authority to take corrective action" on behalf of AISD had "actual knowledge" of the harassment. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 359 (5th Cir. 2020) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (referring to such an official as an "appropriate person"). Courts generally have found that such appropriate persons include school officials such as principals and vice principals. *See I.F.*, 915 F.3d at 372 (finding that school district had actual knowledge of harassment once plaintiffs reported incident to school counselor, who then reported it to assistant principal); *Sneed v. Austin Indep. Sch. Dist.*, 490 F. Supp. 3d 1069, 1086 (W.D. Tex. 2020) (finding that contacts with high-level school officials such as assistant principals and interim principals were sufficient to satisfy knowledge requirement); *Doe v. Edgewood Indep. Sch. Dist.*, No. 5:16-CV-01233-OLG, 2019 WL 1118516, at *6 (W.D. Tex. Mar. 8, 2019) (finding that "appropriate person" is a "school official high enough up the chain-of-command that his acts constitute an official decision"), *aff'd*, 964 F.3d 351 (5th Cir. 2020); *E.M. by J.M. v. Austin Indep. Sch. Dist.*, No. A-17-CA-387 LY, 2018 WL 627391, at *6 (W.D. Tex. Jan. 30, 2018) (finding that high school principal is an "appropriate person" to notify for Title IX purposes), *aff'd sub nom. E.M. By Next Friend of J.M. v. Austin Indep. Sch. Dist.*, 770 F. App'x 712 (5th Cir. 2019).[6]

Here, Plaintiffs reported the bullying and harassment to Assistant Principal Lopez on September 26, 2017, including describing the racist comments, identifying the Harassers, and informing Lopez that Z no longer wanted to go to school because of the bullying. Menzia Dep. at 14:8-15:5; Z Dep. at 37:12-24. AISD does not dispute that Lopez was an "appropriate person" to

---

[6] *See also Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) (assuming without deciding that principal was an official with power to remedy discrimination on behalf of school district).

impute knowledge to AISD. Accordingly, AISD had knowledge of the harassment on September 26, 2017. *See I.F.*, 915 F.3d at 372 (finding that school district had actual knowledge of harassment on date victim reported incident to school counselor, who then reported it to assistant principal).

To defeat AISD's Motion for Summary Judgment, Plaintiffs next must adduce evidence sufficient to create a genuine issue of material fact that Lopez acted with deliberate indifference to the harassment. *Doe*, 220 F.3d at 384.

### C. Deliberate Indifference

"Once on notice of the problem, a school district 'has a legal duty to take reasonable steps to eliminate' a racially hostile environment." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1034 (9th Cir. 1998) (quoting 59 Fed. Reg. 11450). "When a district is 'deliberately indifferent' to its students' right to a learning environment free of racial hostility and discrimination, it is liable for damages under Title VI." *Id.* (quoting *Gebser*, 524 U.S. at 277).

Noting the flexibility school administrators require, the Supreme Court has explained that a school district should be "deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. "Mere negligence will not suffice. Accordingly, officials may avoid liability under a deliberate indifference standard by responding reasonably to a risk of harm, even if the harm ultimately was not averted." *Fennell*, 804 F.3d at 410 (cleaned up). But "a failure to act" can amount to deliberate indifference. *Id.* at 411 (quoting *Monteiro*, 158 F.3d at 1034). Thus, a school district "is liable for its failure to act if the need for intervention was so obvious, or if inaction was so likely to result in discrimination, that 'it can be said to have been deliberately indifferent to the need.'" *Monteiro*, 158 F.3d at 1034 (quoting *Canton*, 489 U.S. at 390).

Plaintiffs first reported the racial harassment to Lopez on September 26, 2017. Menzia Dep. at 14:8-15:5; Z Dep. at 37:12-24. In response, Lopez contends that he attempted to call one of the Harassers' parents but "was ultimately unsuccessful in reaching the other students' parents." Dkt. 49 at 16; Menzia Dep. at 22:24-23:1. Lopez took no further action to contact the Harassers' parents or to meet with the Harassers to address the bullying.

AISD argues that "attempting to contact the parents to have a conference regarding misconduct equates to some action." Dkt. 49 at 16. The Court disagrees. Attempting to call a parent of an alleged harasser without any other remedial action amounts to doing nothing, and "[d]oing nothing is a classic case of indifference." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 (5th Cir. 2020). Accordingly, Plaintiffs have created a fact issue as to whether AISD was deliberately indifferent to Plaintiffs' complaints of racial harassment. "It goes without saying that being called a 'nigger' by your white peers (or hearing that term applied to your Black classmates) exposes Black children to a 'risk of discrimination' that is so substantial and obvious that a failure to act can only be the result of deliberate indifference." *Monteiro*, 158 F.3d at 1034; *see also Davis*, 526 U.S. at 654 (holding that student alleged deliberate indifference where school district "made no effort whatsoever either to investigate *or* to put an end to the harassment"); *Sewell*, 974 F.3d at 586 (finding that plaintiff alleged deliberate indifference where school board did nothing to respond to verbal abuse of student after being notified of the verbal abuse); *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 262 (6th Cir. 2000) (affirming Title IX verdict when defendants presented "no evidence" of remedial measures other than district officials "talking to" harassing student); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 457 (5th Cir. 1994) (finding that fact issue existed as to deliberate indifference where school official failed to take any action to prevent or stop teacher's alleged abuse of student after he was notified of alleged molestation).

Menzia again reported the harassment to Lopez on October 13, 2017, and October 17, 2017, when she picked up Z from school after she was arrested for assault. Menzia Dep. at 29:22-30:1. AISD argues that it was not deliberately indifferent to these complaints because Lopez investigated the bullying, and relies on the October 17, 2017 letter Lopez sent to Menzia finding that the reported conduct did not constitute "bullying" or "harassment." Dkt. 49-8 at 25. It is not clear, however, whether this "investigation" was in response to Plaintiffs' complaints about racial harassment or the October 17 assault incident. In addition, Plaintiffs contend that Lopez lied about performing the investigation because he was in training on the day he said he had performed the investigation. Menzia Dep. at 32:1-7 Nor does it appear that Lopez referred Plaintiffs' complaints to the Title VI Coordinator or anyone else at AISD.

The Court finds that Plaintiffs have created a fact issue as to whether AISD through Lopez was deliberately indifferent to Plaintiffs' complaints of harassment based on race and national origin. Accordingly, AISD's Motion for Summary Judgment should be denied.

## IV.    Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Austin Independent School District's Motion for Summary Judgment (Dkt. 49).

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen

(14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

   **SIGNED** on June 2, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE
