IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Z.M-D b/n/f THERESE MENZIA, | § | |
|     Plaintiffs, | § | |
| | § | Civil Action No. 1:19-cv-00991 |
| v. | § | |
| | § | Jury Trial |
| AUSTIN INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
|     Defendant. | § | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION**
**PURSUANT TO RULE 59(e)**

**NOW COMES** Z.M-D by and through her mother and next friend, Therese Menzia, (collectively "the Plaintiffs") and files this *Motion For Reconsideration Pursuant To Rule 59(e)* of the District Court' overruling that Magistrate's *Report and Recommendations* and GRANTING the School District's *Motion For Summary Judgment* and in support thereof would respectfully show this tribunal the following:

**I. BACKGROUND**

1.    Z.M-D filed her *Original Complaint* [DE# 1] later amended [DE# 17] against the Austin Independent School District ( the "School District" or the "AISD") pursuant to Title VI of the Civil Rights Acts of 1968, codified at 42 U.S.C. §2000d *et seq*. ("Title VI"), alleging she was a victim of discrimination based upon, race, ethnicity and country of origin. The School District has filed a *Motion For Summary Judgement* [DE# 49] ("the Motion"); Z.M.-D filed a *Response* [DE# 60] and the District a *Reply* [DE# 64]. The Magistrate Judge issued a *Report And Recommendation* [DE# 64]; Z. M-D v. Austin Indep. Sch. Dist., 2021 U.S. Dist. LEXIS 104123 (W.D. TX, -Austin Division, June 2, 2021) finding, among other things, the District was deliberately indifferent to Z.M.-D., and accordingly recommended that this

Court deny the District's Rule 56 Motion. The School District filed an *Objection* [DE# 65] arguing, among other things, they were not deliberately indifferent to Z.M.-D.  The Court initiated a *de novo* review of the file and the evidence cited therein On July 26, 2021 the Court issued an *Order* [DE# 81] agreeing with the School District's position and rejecting the recommendation made by the Magistrate.

2.  As will be more argued below, respectfully, Plaintiffs file this *Motion* because the Court failed to follow well-settled standards for reviewing a *Motion For Summary Judgment.* Among other things, the Court failed to view all facts and inferences in the light most favorable to the nonmovant and to resolve all disputed facts in favor of the nonmovant. Moreover, the Court made credibility determinations and weigh the evidenced in favor of the School District, when ruling on their motion for summary judgment.  As this too will be more specifically noted below, the Court's opinion rested upon representations and statements that the School District made in their *Objection* that is not supported in the record.[1]  Accordingly, the Court should correct it's mistake in *Granting* the School District's *Motion* as to permit the current finding to stand would be manifestly unjust. This *Motion For Reconsideration* should be granted and the District's *Motion For Summary Judgment*, whether in total or in part, should be denied.

## II.  STANDARDS OF REVIEW

A.  FOR A RULE 59 MOTION.

3.  Federal Rule Of Civil Procedure 59( e) permits a party to *Alter Or Amend A Judgment* within 28 days after such judgment is entered. The Court may grant a timely motion for

---

[1]. Plaintiffs do not accuse the District of recharacterizing some of their facts and their sequencing as nefarious, but do believe they are misleading.

reconsideration "for any reason that would justify granting one on a party's motion." Such reasons include "a clear error of law or to prevent manifest injustice." Alvarez-Sanders v. Texas Youth Commission, 2009 U.S. Dist. LEXIS 135912 (W.D., TX- San Antonio Division, April 29, 200) *citing* Zinkland v. Brown, 478 F3d 634, 637 (4th Cir. 2007) ["Rule 59(e) in essence, gives the district court a chance to re-examine the evidence and correct any mistakes).

B.  FOR A RULE 56 MOTION FOR SUMMARY JUDGMENT

4.  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmovant and resolve all disputed facts in favor of the nonmovant. Boudreaux v. Swift Transp. Co., Inc., 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  Accordingly, a court may only grant summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986); Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

5.  In this case there is a dispute as to whether the language used in the School District's *Objections* are actually in accord with the underlying evidence they cite.  To the extent it is not, then clearly there is a contested issue of material fact which should inure to the benefit

of the Plaintiffs. To the extent there is some lack of clarity than any inferences related thereto should likewise inure to the benefit of Plaintiffs. Last, and even if the Court believes that the evidence relied upon by the School District in the *Objections* may be sufficient to survive the attack they were deliberately indifferent, Plaintiffs argue the Court failed to correctly apply the standards of review set forth in <u>Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629, 650, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) and its progeny. Accordingly, and for any and the reasons more fully argued below the *Reconsideration* should be granted.

C.  IN SPECIFIC CASES ADDRESSING DISCRIMINATION

6.  In <u>Roger Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 141; 120 S. Ct. 2097, 2105; 147 L.Ed 2d 105, 116 (2000) the Supreme Court noted that in the exercise of looking to the facts and the reasonable inferences from those facts, it is particularly crucial in cases regarding discrimination "as the question facing triers of fact in discrimination cases is both sensitive and difficult."

## IV.  **RELEVANT FACTS PROVIDED BY PLAINTIFFS**

7.  Plaintiffs incorporate by reference, as if fully set forth herein, all the evidence provided by the School District in support of their *Motion* and of course, Plaintiffs do the same as to the evidence they provided in their *Response.*

## V.  **THE MAGISTRATE'S REPORT AND RECOMMENDATIONS**

8.  The Magistrate duly noted that for Z.M.-D to survive a motion for summary judgment a school district receiving federal funds may be liable under Title VI for student-on-student harassment if: (1) the harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits

provided by the school," i.e., a racially hostile environment; (2) the district had actual knowledge of the harassment; (3) the harasser was under the district's control; and (4) the district was deliberately indifferent to the harassment. <u>Fennell v. Marion Indep. Sch. Dist.</u>, 804 F.3d 398, 408 (5th Cir. 2015); *quoting* <u>Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629, 650, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) and that the AISD disputed the first, second and fourth prongs.

9. The Magistrate found that as to the first prong the fact Z.M.-D was repeatedly shamed and humiliated on the basis of her race "on a daily basis" which was harassment far beyond normal schoolyard teasing and bullying." Taken together, that the facts evidenced the harassment was severe and pervasive. Further and that as to the fourth prong, that the bullying and harassment deprived her of equal access to educational opportunities as she attempted to harm herself, had to be hospitalized for severe depression and suicidal ideation due to the harassment, missed school, did not want to return to school, and ultimately transferred to a different school. <u>Z.M.-D</u> at* 12-14 *citing* <u>Fennell</u> at 409- 410.

10. In regard to the *deliberate indifference* prong the Magistrate found that the (mere) attempt by Assistant Principal Lopez to contact other student's parents, without follow up and "without (any) remedial action" equates with "doing nothing." Moreover, that the District's reliance on the contention Lopez completed an investigation that considered race-based bullying and harassment, was not clear from the record. Taken together, all the above supported Plaintiffs' contention the School District was deliberately indifferent to Z.M.-D. <u>Z.M.-D</u> at* 17-20.   The District filed their *Objections* in a timely manner. [DE# 64].

## V. THE SCHOOL DISTRICT'S OBJECTIONS TO THE MAGISTRATE'S REPORT

11. As a matter of course, the District did not contest the findings that the harassment was race-

based, or severe and pervasive and that Z.M.-D. experienced a deprivation of equal access to educational opportunities because of the harassment she experienced. Rather, the School District addressed two concerns. First, that the Magistrate erred in her decision there was a fact question as to whether or not the District was deliberately indifferent. Second, that any argument supporting the proposition that the District was deliberately indifferent because they failed to follow their own policies and procedures was incorrect. [DE# 64].[2]

12. In response and in regard to the "deliberately indifference" issue the District wrote that [DE# 65, p. 2/9] "that the harassment was reported to Assistant Principal Lopez on September 26, 2017" ... "that Lopez met with Z.M.-D and Menzia and ..... would call the parents[3] of the other children- which he did[4] but was ultimately unsuccessful in reaching them[5] at the time." [DE# 49, Exh. 1 at 15:1-5, 16:19, 22:24-23:1]. Further, that this attempt "equates to

---

[2]. Plaintiffs do no address this point in the Rule 59(e) *Motion* but do not waive or abandon this particular argument for an appeal, if one is filed.

[3]. The deposition testimony provided by the School District in support Lopez' statement is different that what they wrote in their *Objections*. Rather, an actual reading of the evidence supports the statement Lopez said he would contact one parent, not a number of parents. There is no proof that he did not attempt to call or that the parent did not pick up the phone. Mother asked him to follow up with a note or other contact with the parent of J'Carla, [Exh. 1, p. 19, l. 18-19], but there's no evidence he ever did that Moreover, Z.M.-D testified in her deposition that she was being bullied and harassed not only by J'Carla but also by Courtney, Indiana, Christiana, Leah, Rosaleah and Holister. Further, that all the girls were using racial language. [DE# 49, Exh. 2; p. 37, l. 12-24]. There is no evidence an attempt was made to call any other parent at that time.

[4]. There is no evidence in the District's Original *Motion For Summary Judgment* [DE# 49] or exhibits attached that he contacted any other parents, except the one involved in the incident between Z.M.-D and J'Carla on October 17th or any other time. Accordingly, the inference is that the investigation, to the extent there actually was one was more akin to a "day-to-day" disciplinary incident and not run considering race-based animus, discrimination based upon race or a civil rights violation.

[5]. Again, there is no "them."

some action and negates any deliberate indifference." [DE# 65, p. 2-3/9].

13. In regard to the Magistrate's conclusion that Lopez took no further action to address the bullying after September 26, 2017, it "fails to account for the undisputed evidence that shows he took action to address the substance of Z.M.-D.'s complaints [DE# 65, p. 3/9] citing [DE# 64, at p. 12]. It is undisputed that Lopez spoke to both Z.M.-D. and the other student when either of them reported the other was being disrespectful and directed them to stop. [DE# 49, Exh. 11 at p. 7; DE# 60, Exh. C at 19:8-17]." Ms. Delagarza-Conness testified that Lopez engaged in disciplinary measures including conferences with the students and parents .... " [DE#64, p. 3/9, fn. 1].[6]

14. In support of the position they were not deliberately indifferent they write that in regard to mother's "second report of harassment on October 13th" Lopez initiated and completed[7] a bullying investigation and report [DE# 49, Exh. 12] prior to the assault on Tuesday the 17th. They further write that Lopez detailed that his administrative investigation included interviewing students involved, as well as staff members and other students who may have

---

[6]. Delagarza-Conness also testified that Lopez told her that neither Mrs. Menzia nor Z.M.-D provided him with sufficient details and thus could not "effectively investigate and provide appropriate discipline." [Exh. 49, Exh. 11, p. 3]. It is true, we don't know exactly what Lopez told Delagraza-Conness but we do know that Z.M.-D said she was very specific about who she complained about to Lopez and that specific allegations of derogatory racial terms were used. This difference creates an *inference* that Lopez was not truthful with Delagarza-Conness. [DE# 49, Exh. 2; p. 37, l. 12-24].

[7]. In their *Motion For Summary Judgment* they write that Lopez "initiated paperwork to open a bullying investigation..." [DE# 49, p. 5/20]. Assuming that its true, the District again attempts to create an *inference* that it was a race based inquiry. Moreover, there is no actual evidence he actually completed an investigation.

Plaintiffs' Motion For Reconsideration 7

knowledge of the allegations. He notes that Z.M.-D discussed being called names.8 Based upon that investigation, he determined that the allegations of Z.M.-D being a victim of bullying was unfounded.[DE# No. 49, Exh. 12, Exh. 1 at 29:23-30.1].9

15. Also in support of their position the District addresses the incident between Z.M.-D. and Ja'Carla on October 17th. They write that Lopez initiated an investigation met with both girls and initiated some informal disciplinary measures. Also, Lopez was replaced with another Assistant Principal, Ms. Showels. [DE# 49, Exh. 11 at 6-8, *see also* DE# 60, Exh. C, at 19:8-17].10

16. In summary, that Lopez met with Menzia on multiple occasions, attempted to contact other student's parent's, verbally reprimanded other students, and conducted a bullying investigation. [DE# 49, Exh. 1 at 14:8- 15:5; 15:1-5; 16:8-19. 18:20- 20:16. 22:21-23; Exh. 2 at 37:7-11; 38:19-23; Exh. 11 at 6-8, Exh. 12; *see also* DE# 60, Exh. C, at 19:8-17].

---

8. The use of the phrase "being called names" raises the questions whether she again spoke with him about race-based names or not. It is unknown and any *inference* the District or the Court may want to consider that it did address race must be rejected in favor of Plaintiff's position it did not.

9. It is true that Lopez produced what the District is now calling an investigatory report [DE# 49, Exh. 12] but its credibility is questionable. First, it was only developed and produced "on the spot" after mother asked for an investigation to be completed. In fact, at the same time the Counselor asked mother if Lopez had told her what he was going do, as he had promised, and he walked out without responding. [DE# 49, Exh. 1, p. 19, l. 20-25; p. 20, l. 1-9]. In this "so called" investigation Lopez writes that he interviewed "other students and staff members." There is no independent proof he did what he wrote. In fact, when deposed he could not remember anything. [DE# 58, Exh. 3]. He was such a poor witness and unhelpful to the School District they did not even attempt to get him to write a Declaration or Affidavit. Anything related to him has no credibility.

10. Plaintiffs do not contest these facts but object to the inference this investigation was related to the bullying and harassment based upon race that Z.M.- D experienced. The exhibits related thereto reflect that incident was considered a police [DE# 49, Exh. 8, 11] and general discipline matter, not one considering racial animus or discrimination.

Plaintiffs' Motion For Reconsideration                                                                                                8

Further, that Z.M.-D was provided additional counseling services. [DE# 49, Exh. 7].

## IV.  THE COURT'S ORDER

17. In regard to the "deliberate indifference" issue the Court wrote (at p. 4/5):

" The evidence in this case, even viewed in the light most favorable to Plaintiffs, fails to raise a genuine dispute that the District's responses to Plaintiffs report of harassment on September 26 and October 13, 2017 were clearly unreasonable.  The Department too some action in response to all the incidents noted by Plaintiffs, including meeting with Plaintiffs, attempting to contact the parents of the other students reported by Plaintiffs, conducting an investigation and filing a report, offering Plaintiffs counseling services and ultimately replacing the administrator in charge of Plaintiffs' claim on October 17, following a physical altercation between the victim and another student. ....... Because some action was taken in an attempt to address each of these issues, these incidents do not create a genuine issue of material fact as to deliberate indifference."

## V.  THE DISTRICT COURT ERRED

A.  THE COURT SHOULD GRANT THIS MOTION FOR CONSIDERATION BECAUSE THE EVIDENCE IT RELIED UPON WAS INFIRM

18. For the purposes of this *Motion* Plaintiffs reiterate that the District Court erred because the School District used language in their *Objections* that was not before the Magistrate. Moreover, a review of the actual evidence the District provided in support of their *Objections* "does not say what it says, it says" either.  Based upon the evidence and testimony that is actually reflected in the summary judgment evidence the Court can easily grant this *Reconsideration*.

19. First, there is no evidence that the District took "some action" in response to all the incidents noted by Plaintiffs.  Granted, that on first pass we may need to take Lopez at his word that he attempted to contact one parent, not a group of parents as the District recently wrote, but there is no evidence, whether written or in testimony by anyone, that supports this contention (anyway).  The District also misled the Court when characterizing the letter Lopez gave Mrs.

Menzia as an investigation. The truth is Lopez got up from their meeting, went to a word processor and wrote that he competed an investigation within moments. The letter said he had talked to other students and staff, but there's no actual demonstrative evidence in the District's exhibits that support this contention. No notes, no emails, no telephone calls, nothing. In fact, when the School's General Counsel asked him to send the file [DE# 49, Exh. 13] there is no file to be found. This "report" that the Court gave credit to the District in his *Opinion* is on second look, not an investigation or a report at all. "A 'school's investigation, though promptly commenced ... may be carried out so inartfully as to render it clearly unreasonable.' Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 174 (1st Cir. 2007) *citing* Doe v. Sch. Admin. Dist. No. 19, 66 F. Supp. 2d 57, 64-65 (D. Me. 1999) ["... The plaintiffs' premise is correct; an institutional response to harassment may be carried out so inartfully as to render it clearly unreasonable."]; *see also* Brodeur v. Claremont Sch. Dist., 626 F. Supp. 2d 195, 209-210 (D.N.H. 2009) ["... It is true that, as the District points out, "[e]ach complaint" of Grumman's inappropriate comments to members of the girls' varsity soccer team in 1998 and 2002 was "investigated and corrective action taken." A jury could find, however, that the investigative or the corrective aspect of the District's response to the incidents as a whole was so lacking as to amount to deliberate indifference."]; Doe v. Brown Univ., 304 F. Supp. 3d 252, 259 (D. R.I. 2018) [... "There is no denying that Brown responded to Doe's complaints, and that at least from a certain vantage, its response was arguably far from perfunctory .... . But the law makes plain that a response to Doe's complaints does not, by itself, shield Brown from liability under Title IX; the *nature of the response* (emphasis added) matters."].

20. So what's left in support of the initial determination by this Court that the District was not

deliberately indifferent?  Referring Z.M.-D to counseling on October 13th even though she continued to be bullied and harassed up to incident where perfume was sprayed in her face?Replacing Lopez?  A meaningless "stay-away-agreement" with one student not a half dozen others? Respectfully, Plaintiffs, do not believe "what's left" is enough, in light of the *totality of the circumstances,* to support the previous *Opinion*.  Davis at 629 *citing* Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 82, 140 L. Ed. 2d 201, 118 S. Ct. 998 (__ ) ["... whether gender-oriented conduct is harassment depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the harasser's and victim's ages and the number of persons involved .."]. Again, it is uncontroverted the bullying and harassment that Z.M.-D. experienced was severe and pervasive.  Moreover, she was bullied by at least a half dozen girls, daily and all over the campus.

21. Additionally, Plaintiffs asks the Court to revisit the evidence in support of the position that the District too "some action an attempt to address each of these issues, these incidents do not create a genuine issue of material fact as to deliberate indifference."  Even if the Court still believes that to be true, the summary judgement evidence reflects that the District did nothing after Z.M.-D returned to middle school after she was hospitalized for being suicidal. Nor did the District do anything after she returned to school and the Assistant Principal received complaints she was being bullied and harassed again and had a ball thrown at her in gymnasium.  In fact, after she had perfume sprayed in her face, aside from granting mother's request she be permitted to transfer to another school, there is no evidence they did anything, not even continue the counseling.  As Plaintiffs noted in their *Response* To The School District's *Motion For Summary Judgement* [DE# 60. p. 19/22] the AISD did nothing as compared to what the Defendant School District did in Fennell v. Marion Independent

School District, 804 F.3d 398 (5th Cir. 2015) or S.S. v. E. Ky. Univ., 532 F.3d 445, 453- 56 (6th Cir. 2008) and accordingly Plaintiff's *Rule 59(e) Motion* should be granted..

B. THE COURT SHOULD GRANT THIS MOTION FOR RECONSIDERATION BECAUSE IT FAILED TO CORRECTLY WEIGH THE EVIDENCE

22. Separate and apart from the above, Plaintiffs also filed their *Reconsideration* because the Court gave too much weight to argument and evidence supporting the District's position they "did something" and not enough weight to another element of Title IX caselaw, that the bullying and harassment Z.M.-D. Experienced was severe and pervasive. In plain English, when the bullying and harassment is minimally severe and pervasive, the "did something" can assuredly be less. Alternatively, when the bullying and harassment is severe and pervasive, and not just verbal but physical as well, as it was in this case, the school has a duty to "do more" than just mere "something." Accordingly, the Court committed a clear error of law as to this issue. Vance v. Spencer Cty. Pub. School Dist., 231 F.3d 253, 262 (6th Cir. 2000) [where school was aware that severe harassment of the victim continued, and actually increased, despite prior remedial measures, the principal did nothing to avoid new liability based on new severe and pervasive harassment];

C. THE COURT SHOULD GRANT THIS MOTION FOR RECONSIDERATION BECAUSE IT FAILED TO ADDRESS ALL THE ELEMENTS SET FORTH IN DAVIS

23. In addition and in the alternative to all the above, the Court failed to consider that even if the School District "did something," what it can't do is make the student more vulnerable to ongoing bullying and harassment, which is exactly what occurred in this cause. An institution "may not be liable for damages unless its deliberate indifference 'subject[s]' its students to harassment;" to "subject" a student to harassment, a school need only make the

student *vulnerable* to that harassment. Davis, 526 U.S. at 644-45[11]; Hernandez v. Baylor Univ., 274 F. Supp. 3d 602, 615 (W.D. TX- Austin Division, April 7, 2017)[finding school's failure to respond reasonably to known harassment created an environment where the students could continue assaulting the student with impunity]; Chavez v. Richardson Indep. Sch. Dist., 2017 U.S. Dist. LEXIS 134489 at * 26-27 (N.D. TX- Dallas Div., August 23, 2017)[while School need not have remedied the Bullies' harassment or acceded to Plaintiffs'"remedial demands," *citing* Sanches v. Carroloton-Farmers Indep. Sch. Dist., 647 F.3d 156, 167-68 (5th Cir. 2011) but at the same time, RISD had a duty not to actively expose N.C. to the Bullies' ongoing harassment. Watkins v. La Marque Indep. Sch. Dist., 308 Fed. Appx. 781, 784 (5th Cir. 2009)[finding no deliberate indifference because District took steps to prevent future incidents, including separating the students and providing an escort, as compared to Davis, where the student was forced to sit directly next to the victim in class for three months while the harassment of the victim and other students continued. Id. at 635].

## CONCLUSION AND PRAYER

The District's *Motion* relies upon their own carefully crafted affidavits and excerpted documents from their own files. In essence, it is their own story, in their own words they ask this Court to believe. As a general rule, at the summary judgment stage, a Court should view these assertions with a very high degree of caution. International Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1265-1266 (5th Cir. 1991)[a "cold read" of a motion for summary judgment is generally no

---

[11]. That is, the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it. Random House Dictionary of the English Language 1415 (1966) (defining "subject" as "to cause to undergo the action of something specified; expose" or "to make liable or vulnerable; lay open; expose"); Webster's Third New International Dictionary of the English Language 2275 (1961) (defining "subject" as "to cause to undergo or submit to: make submit to a particular action or effect: EXPOSE").

substitute for a trial, because it "cannot unmask the veracity of a witness clad in a costume of deception; it cannot unveil that a seemingly well-groomed witness is coming apart at the seams or that "he fidgets when answering critical questions, his eyes shift from the floor to the ceiling and he manifests all other indicia attributed to perjurers."]. Based upon the review of the facts and evidence that the District has presented in their *Objections* upon which this Court substantially relied, the Court can surely revisit their language, evidence and legal argument with a "high degree of caution." *See* Button v. Bd of Regents of Univ., 289 F.2d 964, 968 (9th Cir. 2008) [in a case involving a deaf student who alleged that the college did not provide him with sufficient accommodation, the court stated it was "not enough that the [defendant] took some action" and that this inquiry into [whether the actions of defendant were insufficient and deliberate] is nuanced and fact intensive, precisely the province of the jury."];

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that their *Motion For Reconsideration* be GRANTED that the *Motion For Summary Judgment* be denied, the case be reset on the trial docket, and for such other relief as the Court deems just and proper, whether in law or in equity, or both.

Respectfully submitted,

/s/ Martin J. Cirkiel
Mr. Martin J. Cirkiel, Esq.
SBN 00783829
FID 21488
Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com [Email];

Mr. Daniel J. Christensen, Esq.
DC Law, PLLC

SBN 24010695
daniel@texasjustice.com [Email]
Ms. Christine R. Londergan, Esq.
DC Law, PLLC
SBN 24109483
christine@texasjustice.com [Email]
1012 W Anderson Lane
Austin, Texas 78757
(512) 220-1800 [Telephone]
(512) 220-1801 [Facsimile]

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that a true and correct copy of the foregoing has been forwarded to all parties on this the 30th day of August 2021, in accordance with the Federal Rules of Civil Procedure and the Court's electronic filing system.

Mr. Jonathan Brush, Attorney & Counselor At Law
jbrush@rmgllp.com [Email]
Ms. Amy Demmler, Attorney & Counselor At Law
ademmler@rmgllp.com [Email]
ROGERS, MORRIS & GROVER, L.L.P.
5718 Westheimer, Suite 1200
Houston, Texas 77057
(713) 960-6000 [Telephone]
(713) 960-6025 [Facsimile]
ATTORNEYS FOR DEFENDANT
AUSTIN INDEPENDENT SCHOOL DISTRICT

           */s/ Martin J. Cirkiel*
           Martin Cirkiel, Attorney